IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| James Murdock, et al., | NO. C 04-01237 JW |
| Plaintiff(s), | **ORDER RE APPEAL OF ADVERSARY PROCEEDING IN BANKRUPTCY COURT** |
| v. | |
| Nick Holquin, et al., | |
| Defendant(s). | |

## I. INTRODUCTION

This case involves the issues of whether abandoned property should be included in the bankruptcy estate and whether a plan debt is dischargeable when a Chapter 11 bankruptcy proceeding is converted to a Chapter 7 liquidation proceeding after the plan has been confirmed. The debtors in this case are Appellees Nick and Juanita Holquin ("the Holquins"). They owned two parcels of commercial real property which were being foreclosed. Creditors filed involuntary Chapter 7 proceedings against the Holquins. Those proceedings were then converted to a Chapter 11 reorganization. A trustee was appointed. Of utmost significance to this case, in the course of the Chapter 11 proceedings, the trustee abandoned one of the two parcels of real property owned by the Holquins and the Bankruptcy Court approved the abandonment of the property.

Later in the proceedings, the trustee proposed a reorganization plan. The plan involved only one parcel of property. Under the terms of the plan, the Holquins agreed to refinance this remaining parcel of real property. As part of the reorganization plan, the Appellants James and Regina Murdock

("the Murdocks") agreed to make a new $350,000 unsecured loan to assist in financing the plan. The Bankruptcy Court confirmed the plan.

Eventually, however, the Holquins defaulted on their obligations under the plan. Consequently, the Murdocks filed a lawsuit for breach of contract to repay the $350,000 loan in Santa Clara County Superior Court. In addition to filing the state court action, the Murdocks also petitioned the Bankruptcy Court to convert the Chapter 11 proceedings to a Chapter 7 liquidation. The Bankruptcy Court granted the motion.

When the Murdocks continued to pursue the state court action and obtained a writ of attachment against the earlier abandoned commercial real property, the Holquins filed an adversary proceeding to enjoin the Murdocks from continuing to prosecute the state court action. The Murdocks filed an adversary proceeding seeking a ruling that the Chapter 11 loan was not dischargeable and that, therefore, they had the right to use that loan as a basis for continuing to pursue their state law breach of contract action.

In its Memorandum Decision, the Bankruptcy Court held that the Chapter 11 loan was dischargeable in the converted Chapter 7 proceedings and enjoined the Murdocks from seeking to enforce it in the state court lawsuit. The Murdocks filed this timely appeal from that decision. Although this Court disagrees with a statement by the Bankruptcy Court in its Memorandum Decision that a case converted to Chapter 7 after confirmation is no different than one converted prior to confirmation, this Court AFFIRMS the decision of the Bankruptcy Court with respect to the dischargeability of the post-confirmation debt.

## II. BACKGROUND

The debtors involved in this case are Nick and Juanita Holquin ("the Holquins"). Nick Holquin operated a tax preparation business. The Holquins also operated a fishing resort in Laytonville, California. James and Regina Murdock ("the Murdocks") were customers of Nick Holquins' tax business. Over the years, the Murdocks and the Holquins engaged in a variety of business transactions. In the course of those transactions, the Holquins became indebted to the Murdocks and others.

2

On November 28, 1994, in two separate cases, several creditors filed a petition to place the Holquins into involuntary Chapter 7 bankruptcy proceedings. A few weeks later, however, the Holquins and their creditors stipulated to convert the Holquins' cases to Chapter 11 reorganizations rather than Chapter 7 liquidations. On February 24, 1995, the Bankruptcy Court entered an order approving the stipulation. On November 13, 1995, the Bankruptcy Court appointed David A. Bradlow as Chapter 11 Trustee[1].

The Holquins' major assets consisted of two commercial real properties, one in San Jose, California, and the other, a fishing resort in Laytonville, California. It appears that at the inception of the bankruptcy proceedings, the Holquins were in default on outstanding loans securing both properties and foreclosure proceedings were pending against both properties. The Trustee valued the San Jose property as worthless to the creditors because the first and second deeds of trust held by Robert and Rosemarie Linsmeier and Armida Lopez, respectively, exceeded the fair market value of the property. Significant to later proceedings in this case, on May 21, 1996, at the instance of the Chapter 11 Trustee, the Bankruptcy Court entered an order abandoning of the Holquins' interest in the San Jose property.

The Chapter 11 Trustee believed that there was substantial equity in the Laytonville property. The Laytonville property was subject to first and second deeds of trust in the total sum of approximately $700,000. It also had $57,000 in property taxes due. However, the Trustee believed that the property was worth approximately $1,700,000. Although the Trustee had reservations about whether the property could be sold for that amount, it appeared that there was sufficient equity in the property to fund a reorganization.

On July 29, 1996, the Trustee submitted for approval a Plan of Reorganization proposed by the Trustee and the Creditors' Committee. The Plan recognized that the principal asset of the Holquins was the Laytonville property, which was subject to a first deed of trust by Mildred Mast. Under the terms of the Plan, the Mast deed of trust would continue in full force and effect, with no restraint on

---

[1] On September 29, 1995, the creditors petitioned to convert the cases back to Chapter 7. However, apparently this petition was withdrawn.

foreclosure. However, the goal of the Plan was to avoid that eventuality. The Plan provided that the Holquins would sell a 45% interest in the Laytonville property plus certain personal property to the Murdocks for $560,000. After the sale of a 45% interest to the Murdocks, under the Plan, the Holquins would refinance their remaining interest in the Laytonville property. In addition, under a contract entitled "Agreement of Understanding," James Murdock agreed to make a new unsecured $350,000 loan to the Holquins and to deposit those funds with the Trustee[2]. Under the proposed Plan, this new loan, along with the other cash amassed under the Plan, would be used to pay all lienholders on the Laytonville property, administrative claims and unsecured creditors. The proposed Plan provided that the Holquins would continue to operate the fishing camp business on the Laytonville property. The Holquins would repay the Murdocks from the operation of the Laytonville property or from any refinance or sale of that property. The San Jose property was not included in the proposed Plan.

On October 9, 1996, the Bankruptcy Court confirmed the Plan. The Plan incorporated the "Agreement of Understanding."[3]

On January 6, 1998, the matter was before the Bankruptcy Court on, among other matters, a motion by the Murdocks to convert the Holquins' Chapter 11 cases to Chapter 7 liquidations. The attorney for the Trustee indicated that the parties had reached a stipulation, which he proposed to recite on the record.[4]

---

[2] On March 13, 1996, in what was called as "Agreement of Understanding," the Murdocks agreed to lend the Holquins $350,000 to fund the Holquins' reorganization plan. Under the Agreement of Understanding, the Murdocks agreed to deposit $350,000.00 with the Chapter 11 Trustee. This deposit constituted an unsecured loan that the Holquins agreed to repay by securing an additional loan on certain real property they owned located in Laytonville, California.

[3] Notably, despite participating in the funding of the Chapter 11 Plan, the Murdocks did not file any claim for payment of debts owed to them as of October 9, 1996. The Murdocks would later claim that these pre-confirmation debts were not discharged when the plan was confirmed. Later still, the Murdocks withdrew that contention.

[4] There was a lengthy discussion of the proposed stipulation. At one point, the Court recessed to allow the parties to discuss questions regarding the mechanics of the stipulation. Eventually a stipulation was placed on the record.

4

Under the terms of the stipulation, on March 11, 1998, (60 days from the date of the stipulation) or earlier if there were an earlier default, the cases would convert to a Chapter 7 liquidation, unless:

1. The Holquins made the January 1998, and February 1998, payments on the first deed of trust on the Laytonville property; and

2. On or before March 10, 1998, the Laytonville property was refinanced. The proceeds of the refinancing would be used to pay real estate taxes, the first, second and third deeds of trust, and balance would be paid to the Murdocks toward the $350,000 Chapter 11 loan.

During the recitation of the stipulation, the previously abandoned San Jose property was discussed. Counsel for the Trustee reported that the San Jose property was in the final stages of foreclosure by Linsmeier. He indicated that the Holquins would try to negotiate a deal with Linsmeier. However, if those negotiations were unsuccessful, the San Jose property would go to Linsmeier and was not subject to the stipulation.

Counsel reported that the $350,000 loan which had been made by the Murdocks as part of the Chapter 11 plan was in the hands of a disbursing agent and that those funds would be distributed according to the Plan. Counsel emphasized that the $350,000 would not become an asset of the Chapter 7 estate if conversion occurred before disbursement.

In the recital of the stipulation, the parties clarified that as the deadline for performing each event covered by the stipulation occurred, if the Holquins defaulted on performing that task, the cases would be converted from Chapter 11 to Chapter 7 the next day.[5] The parties also stipulated to a

---

[5] THE COURT: No. Well, wait a minute. You have to work out the mechanics of this. So let me just offer you some suggestions.

You have to spin out an order that causes this to happen. So I have to grant the motion in part pursuant to the parties' stipulation. And the first thing would be – the first condition precedent is there's a payment to be made on January 15?

MR. MILGROM: Correct.
MR. COLISTRA: Correct.
THE COURT: And if that payment's not made, we have a conversion on the 16th.
MR. MILGROM: Correct.
[Transcript of Proceedings January 6, 1998, p.7.]

5

procedure for a short delay in conversion if, for example, a short amount of time was needed to close the refinancing in the event of conversion.

On the record, each creditor and the Trustee through their respective attorneys agreed to the stipulation. The court appointed one of the attorneys to prepare a formal order and to tender it to the other attorneys for "sign off."

Two days later, on January 8, 1998, counsel for the Murdocks filed a notice of their withdrawal from the stipulation. The notice of withdrawal stated that the Murdocks had agreed to the stipulation because they understood from "side" conversations with the Trustee that if the cases were converted to Chapter 7, the Laytonville property would not be included in the bankruptcy estate, and that the Murdocks now understood that a rule of bankruptcy would require the Laytonville property to be included. Thus, the Murdocks contended in the notice of withdrawal that they consented to the stipulation on the basis of misrepresentations. They stated that they refused to sign-on to any proposed order and objected to the Bankruptcy Judge entering any order based on the stipulation.

In addition to filing a notice of withdrawal from the stipulation, also on January 8, 1998, the Murdocks filed a complaint in the Santa Clara County Superior Court against the Holquins, alleging breach of the Chapter 11 Agreement of Understanding and various related tort claims.

On March 10, 1998, the Murdocks filed an affidavit of default by the Holquins to fulfill the requirement of the Chapter 11 Plan and moved the Bankruptcy Court to convert the cases to Chapter 7. The Creditors' Committee joined in the motion.

On April 27, 1998, the Bankruptcy Court ordered the cases converted to Chapter 7. The order reviewed the events of January 6, 1998 and the subsequent failure of the parties to submit a written stipulation and the failure of the Holquins to refinance the Laytonville property.

With proceedings against the Holquins in state court and Chapter 7 proceedings in Bankruptcy Court, on August 17, 1998, the Murdocks filed an adversary proceedings (98-5297) seeking an order that the Holquins, having been discharged under Chapter 11, were ineligible for discharge under Chapter 7 or, in the alternative to have the court declare all of the debts owed by the Holquins nondischargeable because the Holquins committed fraud against the Murdocks in connection with

6

those debts. In addition, with reference to the $350,000, the Murdocks sought to have that debt declared nondischargeable because it was made as part of the Chapter 11 plan.

On November 12, 1998, the Holquins, themselves, filed an adversary proceeding (98-5503) against the Murdocks in which the Holquins asked the Bankruptcy Court to enjoin the Murdocks from prosecuting the Santa Clara Superior Court lawsuit.

On July 24, 2000 a pre-trial hearing was held with respect to both adversary proceedings before the Bankruptcy Judge. The Bankruptcy Judge asked counsel for the Murdocks to clarify their contentions why the post-confirmation debt was not dischargeable.[6] Counsel for the Murdocks explained: that the debt was non-dischargeable because it arose from a post-confirmation contract between the Holquins and the Murdocks; that the Holquins' failure to fulfill the Chapter 11 plan constituted a breach of that contract; that the Murdocks were entitled to pursue a claim for breach of the contract in a state court; and that the subsequent conversion of the cases to Chapter 7 did not deprive the Murdocks of the right to pursue their state claim to judgment and if they prevailed, to collect the judgment against the Holquins. In short, the Murdocks claimed that all post-confirmation debts are nondischargeable even if the Chapter 11 is converted to Chapter 7.[7]

---

[6] At the time of this hearing, the Murdocks also contended that the pre-confirmation debts owed to them by the Holquins were dischargeable. The Murdocks took the position that those debts were not dischargeable because "the Murdocks did not get notice of the proof of claim's filing date at the same time that the other creditors got notice of the proof of claims filing date." [Transcript of Proceedings, July 24, 2000, p. 3]. Alternatively, the Murdocks contended that even if they had adequate notice, the failure of the Murdocks to file a claim on the pre-October 9, 1996 debts was due to fraud on the part of the Holquins. [Transcript of Proceedings, July 24, 2000, p. 4-5]. Later, the Murdocks withdrew their claim that pre-confirmation debts were not dischargeable.

[7] THE COURT: So you're saying that if I'm a creditor, and I'm owed a dollar, debtor confirms a plan and provides, pay me fifty cents. And the debtor doesn't pay me the fifty cents, and that I get to sue the debtor in State Court forevermore, history of the world, for that fifty cents until I get it: I get to chase the debtor forever and debtor can never to anything to not pay me the fifty cents?
MR. PAVONE: It's our position that the debtor by failing on his obligations in Chapter 11, does not get the reward of having the creditor compromise his fifty cents, yes. One he agrees to a Chapter 11.
THE COURT: Now my example, the dollar was never nondischargeable. It was never nondischargeable. It's just a simple contract debt. There's no fraud. There's nothing. It's just a supplier to a business, or whatever it is and he gets offered fifty cents on the dollar. And it says, okay, I'll take the fifty cents on the dollar. Are you're telling me that could never be discharged in perpetuity?
MR. PAVONE: Once the creditor agrees to compromise his dollar to fifty cents in a Chapter 11 plan, we believe the creditor can no longer have that fifty cents subjected to another possible dischargeability.

7

1     During the course of the converted Chapter 7 proceedings, the Laytonville property was administered in the Chapter 7 case and the Trustee sold it. The Murdocks raised a number of disputes over their claims. The disputes were settled by the Trustee providing the Murdocks with a dividend on their post-confirmation claim in the Chapter 7 case.

    The Bankruptcy Court conducted a trial on the adversary proceeding. During the trial, the Murdocks advanced yet another basis for their argument that the post-confirmation debt should not be discharged, this time focusing on the previously abandoned San Jose property. The Murdocks contended that as a matter of law, when a case is converted from Chapter 11 to Chapter 7, post-confirmation debts are only dischargeable under Chapter 7 if all of the pre-confirmation assets of the debtor are included in the Chapter 7 estate. The Murdocks point out that the San Jose property was abandoned by the Chapter 11 Trustee and was not brought back into the estate when the cases were converted to Chapter 7. The Murdocks contend, therefore, that since the San Jose property was not brought back into the Chapter 7 estate, it would be unlawful to discharge the post-confirmation debt, leaving the debtor with ownership of property outside of the bankruptcy which would otherwise be subject to liquidation.

    On March 18, 2004, the Bankruptcy Court rendered its decision. The court held that the Murdocks' $350,000 claim was discharged in bankruptcy and entered judgement in favor of the Holquins. The Bankruptcy Court issued a permanent injunction against the State Court proceedings. On March 26, 2004, the Murdocks filed a Notice of Appeal and Objection to referral to Bankruptcy Appellate Panel. The Record of Appeal was entered in the docket of the Court on March 29, 2004.

### III. STANDARDS

    This Court has jurisdiction over the appeal of a final judgment of the United States Bankruptcy Court pursuant to 28 U.S.C. § 158(a). In reviewing a final judgment of the bankruptcy court, findings of fact "shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Bankruptcy Rule 8013; see also In re Fjeldsted, 293 B.R. 12, 18 (9th Cir. BAP 2003). Legal conclusions by the bankruptcy

---

[Transcript of Proceedings, July 24, 2000, p. 11]

8

court are reviewed de novo.  In re Conejo Enters. Inc., 96 F.3d 346, 351 (quoting In re Tucson Estates, Inc., 912 F.2d 1162, 1166 (9th Cir. 1990)).

## IV.  DISCUSSION

To resolve the legal issues raised on this appeal, this Court first must consider the effect of a confirmed Chapter 11 Plan on the assets of the debtor and on pre-confirmation debts, with particular reference to abandoned assets.  Second, this Court must characterize the legal status of the $350,000 post-confirmation debt owed to the Murdocks.  Finally, this Court must decide the effect of conversion of a confirmed Chapter 11 Plan to Chapter 7 on what assets and debts are included in the Chapter 7 case.

**A.  Upon confirmation of the Chapter 11 Plan, all property not otherwise provided for in the Plan vested in the Holquins and all pre-confirmation debts not otherwise provided for under the plan were discharged.**

Bankruptcy Code § 1141 governs the effect of confirmation of a reorganization plan.  Section 1141(b) provides:

> Except as otherwise provided in the plan or the order confirming the plan, the confirmation of a plan vests all of the property of the estate in the debtor.

As applied to the San Jose property, because the Plan made no provision for it otherwise, indeed, because it had been formally abandoned, confirmation of the Chapter 11 Plan vested the San Jose commercial property in the Holquins, subject, of course, to the outstanding liens.  As to the Laytonville property, upon confirmation of the Plan, it became subject of the Plan.  The Holquins became obligated to sell an interest in it and to refinance it and use the proceeds of that sale and refinancing to pay creditors.  Thus, if the Plan was not successful, proceedings could be taken against that asset.  11 U.S.C. § 1141(b).

**B.  Upon confirmation of the Chapter 11 Plan, the $350,000 loan became a contractual obligation of the Holquins to be paid in accordance with the provisions of the Plan.**

Bankruptcy Code § 1141(d)(1) governs the effect of confirmation of a plan on debts:

Except as otherwise provided in this subsection, in the plan, or in the order confirming the plan, the confirmation of a plan--

9

(A) discharges the debtor from any debt that arose before the date of such confirmation. . .

Thus, all pre-confirmation debts owed by the Holquins to their creditors, including the Murdocks were discharged upon confirmation of the Chapter 11 plan. As to post-confirmation debts, a Chapter 11 plan of reorganization constitutes a new contract between a debtor and his or her creditors. "Once the reorganization plan is approved by the bankruptcy court, each claimant gets a 'new' claim, based upon whatever treatment is accorded to it in the plan itself." In re Benjamin Coal Co., 978 F.2d 823, 827 (3d Cir. 1992). Thus, when the Bankruptcy Court confirmed the Plan under which the Murdocks would make a loan to the Holquins to be deposited with the Chapter 11 Trustee and disbursed pursuant to the terms of the Plan, the Murdocks obtained a post-confirmation claim which was to be repaid in accordance with the terms of the plan. Paragraph 2.3 of the Plan provided: "Debtors [the Holquins] are to repay [the Murdocks] and the Laytonville Junior Lienholders' notes from operation of the Laytonville Property, sale or refinancing of the Laytonville Property or any other method Debtors chose."

**C.  If a debtor defaults under a Chapter 11 Plan a creditor has the option of filing a breach of contract action in a state court or petitioning the Bankruptcy Court to convert the case to a Chapter 7 liquidation.**

If a reorganized debtor defaults under the plan, plan claim creditors can initiate an action for breach of contract in a proper court and if successful, enforce their contractual rights in any assets of the reorganized debtor. In re Xofox Indus. Ltd., 241 B.R. 541, 544 (Bankr. E.D. Mich. 1999). If a plan creditor chooses to pursue a state court contract action, state law controls the action, including what assets may be attached to satisfy a judgment.

Remedies are also available against the defaulting debtor under the Bankruptcy Code. Where there has been a "material default by the debtor with respect to a confirmed plan", plan creditors may ask the Bankruptcy court to covert a Chapter 11 to a Chapter 7. Bankruptcy Code § 1112 (b) (7) (8).

If bankruptcy proceedings are initiated, federal bankruptcy law controls the action, including what assets may be liquidated to satisfy any claim.

In this case, the Holquins did not fulfill their obligations under the Chapter 11 Plan. The Murdocks do not contest that under the circumstances of this case the Bankruptcy Court properly converted the case. Indeed, the Murdocks petitioned the court to do so. Rather, they argue that error was committed in discharging the post-confirmation debt and enjoining them from proceeding with the state court action.

**D. When a case is converted from Chapter 11 to Chapter 7 after a plan has been confirmed, since all other assets have vested in the debtor, the estate consists of only those assets which are provided for under the Plan or which a court finds to be otherwise includable as a matter of law in order to give effect to the plan.**

The Murdocks appear to be making a due process argument. They contend that discharge of a debt under Chapter 7 is predicated upon a fair procedure under which debts are discharged in consideration for a requirement that all of the debtor's assets are included in the bankruptcy estate and liquidated. They argue that the previously abandoned San Jose property was not included in the Chapter 7 estate. Furthermore, they contend that it was error for the Bankruptcy Court to enjoin them from proceeding against the San Jose commercial property in their Superior Court action for breach of the "Plan contract," while at the same time not including that property in the Chapter 7 estate. In summary, the Murdocks contend that the post-confirmation debt should not be discharged because to do so would give the Holquins the benefit of bankruptcy protection without requiring them to surrender all of their property—a fundamental premise underlying discharge. This argument is unpersuasive in consideration of the bankruptcy law applicable to a case converted after confirmation of a plan.

A case converted from a Chapter 11 reorganization to a Chapter 7 liquidation after confirmation of a plan is fundamentally different from a straightforward Chapter 7 liquidation. As noted above, confirmation of a Chapter 11 plan vests all of the property of the estate in the debtor, *except as otherwise provided for in the Plan* or as may be otherwise excepted as a matter of law. Similarly, since all pre-confirmation debts are discharged, only the claims provided for under the Plan or arising as part of its administration may be asserted in the converted proceeding. Thus, a Chapter 7 estate which comes into existence upon conversion of a confirmed Chapter 11 consists of only those assets "provided for" in the plan or includable as a matter of law in order to effectuate the plan. All

11

of the cases examined by this Court in which assets were brought into the Chapter 7 estate after confirmation involved circumstances where those courts determined that those assets were subject to the plan and were therefore included in the Chapter 7 estate.

In re Consolidate Pioneer Mortgage Entities, 264 F. 3d 803 (9th Cir. 2001) held that assets of the debtor which were vested in Pioneer Liquidating Corporation under the terms of a Chapter 11 plan were "revested" in the estate upon conversion to Chapter 7.

> The language and purpose of the Joint Plan demonstrates that assets that vested in PLC upon confirmation revested in the estate when the bankruptcy court converted the case to Chapter 7.  Although typically confirmation of a plan 'terminates the existence of the estate[,] . . .reversion of property from the estate to the debtor upon confirmation contained in 11 U.S.C. § 1141(b) is explicitly subject to the provisions of the plan.' (citing Hillis Motors, Inc. V. Hawaii Auto. Dealers' Ass'n, 997 F.2d 581, 587 (9th Cir. 1993) (citation omitted).

Id., at 807.  Implicit in the Consolidated Pioneer ruling is that property outside of the plan did not revest when the case was converted to Chapter 7.  Notably, since all of the assets of the six debtors were transferred to PLC, the Consolidated Pioneer court did not have occasion to decide the issue involved on this appeal, namely the effect of abandonment on dischargeability of a post-confirmation debt.

In re Hughes, 279 B.R. 826 (2002) is also in accord.  There, John Hughes initiated Chapter 13 proceedings and later converted them to Chapter 11.  On the same day two corporations owned by Hughes also filed for Chapter 11 relief.  The cases were consolidated.  A plan was proposed which contemplated the individual and corporate debtors paying listed debts.  The individual's plan was confirmed but the corporate plans were not.  A creditor of Hughes filed a motion to convert the case to Chapter 7 on the ground that he had failed to make payments under the plan and the two businesses, his only sources of income, were continuing to lose money.  The motion was granted.  The Trustee filed an adversary proceeding to seek a declaration that all of Hughes' property which remained in his possession as of the date of the original petition became property of the Chapter 7 estate.  Id., at 828.  The court held, on the limited facts of the case, that all assets of the individual debtor, which would ordinarily have vested in the debtor upon confirmation of the plan, were properly included in the Chapter 7 estate upon conversion three months after confirmation because no steps to effectuate the

12

plan had taken place and a condition for confirmation involving the corporate debtor did not take place. The court explained:

> In this case, the parties contemplated that the debtor's individual and corporate Chapter 11 cases, which were filed on the same date, would proceed to confirmation simultaneously. The individual and corporate debtors' plans were to be confirmed and implemented in conjunction with each other. Failure of the Hughes Inc. Case to be confirmed divested the individual debtor's plan of its essence and made implementation of the plan impossible. Because the premise upon which confirmation was based never came into being, confirmation of the debtor's plan was ineffective to create a valid contract between the debtor and his creditors. Under these circumstances, the Court declines to find that confirmation of the debtor's vested estate property in him individually so as to preclude the trustee from administering such property upon the subsequent conversion of his case to Chapter 7.

Id., at 830-831.

In In re Smith, 201 B.R. 267 (D. Nev. 1996), aff'd, 141 F.3d 1179 (9th Cir. 1998), the Ninth Circuit held that property which revested in the debtor as part of a plan confirmed under Chapter 11 became property of a Chapter 7 estate upon conversion. However, a close reading of the case shows that the property which was brought into the Chapter 7 proceeding was otherwise subject to the plan or includable in order to effectuate the plan.

In In re Smith, the plan provided that the debtor would publish and make prints of an art work called "Daybreak." Upon default in doing so, the case was converted to Chapter 7 and the Trustee sought to include "Daybreak" in the estate. When the debtor objected that after confirmation "Daybreak" was vested in him and left no estate to convert, the district court on appeal held otherwise. Although the district judge did not discuss how the asset came to be part of the Chapter 7 estate, it is clear that it regarded the asset as part of the plan since sales of prints was the source of funding the plan.

Therefore, this Court holds that when this case was converted from Chapter 11 to Chapter 7 after the Plan had been confirmed, since all other assets have vested in the debtor, the estate consists

13

of only the Laytonville property and proceeds from its refinancing or which the Bankruptcy Court found to be otherwise includable as a matter of law in order to give effect to the plan.[8]

**E.    Post-confirmation debts are dischargeable if a plan is converted to Chapter 7 even if the debtor retains vested ownership of assets which were not provided for under the plan.**

The Murdocks' contend that a bankruptcy court may not discharge a post-confirmation creditor, who would otherwise be able to pursue abandoned property in state court if the Chapter 7 case does not include that property.

The effect of a conversion on a post-confirmation creditor is governed by Bankruptcy Code § 348. In pertinent part § 348 provides:

> (a)    Conversion of a case from a case under one chapter of this title to a case under another chapter of this title constitutes an order for relief under the chapter to which the case is converted. . .
>
> (d)    A claim against the estate or the debtor that arises after the order for relief but before conversion in a case that is converted under section 1112 …, other than a claim specified in section 503(b) of this title, shall be treated for all purposes as if such claim had arisen immediately before the date of the filing of the petition.

The reference in section 348(d) to "the debtor" applies to a post-confirmation claim since a post-confirmation claim is against "the debtor."

The Murdocks cite In re Troutman Enterprises, Inc., 253 B.R. 8 (2000) to support their position that conversion does not extinguish post-confirmation debts, leaving them free to pursue a state court action to collect the post-confirmation debt. There are multiple decisions growing out of the bankruptcy of Troutman Enterprises, Inc. None support the Murdocks' claim of non-dischargeability under the circumstances of this case.

In In re Troutman Enterprises, Inc., 244 B.R. 106 (2000) case, Troutman Enterprises, Inc. filed for Chapter 11 relief. Subsequently, the bankruptcy court confirmed a reorganization plan. When

---

[8] Further support of the legal proposition that the property in a converted Chapter 7 is different from that in a normal Chapter 7 may be found by reference to Chapter 13 cases which are converted. Under Bankruptcy Code § 348(f)(1)(A), upon conversion of a Chapter 13 to Chapter 7, the estate consists of the property of the estate, as of the date of filing the petition, "that remains in the possession of or under the control of the debtor on the date of conversion." Thus, Congress clearly expressed its intention to include in a case converted from Chapter 13 to Chapter 7 property otherwise vested in a debtor during Chapter 13 proceedings. The lack of similar language with respect to conversion of a confirmed Chapter 11 case to Chapter 7 can be regarded as an intent to treat conversions differently.

14

Troutman defaulted under the terms of the plan, the Internal Revenue Service moved the court to convert the case to Chapter 7 and that motion was granted. Three years later, four other creditors filed a new involuntary Chapter 7 petition against Troutman under Bankruptcy Code §303(b) on the ground that Troutman had failed to pay debts owed to them and which were to be paid under the terms of the confirmed plan. Troutman moved to dismiss the involuntary petition on the ground that these petitioning creditors did not hold claims against it after the conversion. Citing 348(d), the bankruptcy court held that when a Chapter 11 case with a confirmed plan has been converted to Chapter 7, all post-petition claims, including any that arise under the confirmed plan, be treated as pre-petition claims. Thus, reasoned the bankruptcy court, since the claims of the petitioning creditors were discharged and replaced by obligations under the confirmed plan, those debts are limited to the treatment accorded in the plan.

> Accordingly, the Petitioning Creditors do not have claims which can be asserted against the Reorganized Debtor, but are now limited to asserting their claims against the converted debtor in the context of the Chapter 7 case.

Id., at 100.

The bankruptcy did not leave the matter there, it went further and held:

> By relegating all postpetition, preconversion claims, including those arising from the confirmation of a Chapter 11 plan, to the status of prepetition claims upon conversion to Chapter 7, §348(d) leaves the Petitioning Creditors without claims against the Reorganized Debtor and, accordingly, unable to satisfy the requirements of bringing an involuntary petition pursuant to §303(b). Id., at 112.

Id., at 112.

The Petitioning Creditors appealed to the BAP on the ground that they had standing as post-confirmation creditors to initiate new involuntary proceedings if they otherwise met the requirements of § 303(b). In reversing the bankruptcy court and finding that the creditor had standing, the BAP for the Sixth Circuit stated:

> That section [348(d)] "governs the relative priorities of pre-petition and post-petition pre-conversion claims. Its principal function is to distinguish between Chapter 11 administrative priority claims and non-priority claims, for the former receive a higher distributional priority in the converted Chapter 7 case." In re Pavlovich, 952 F.2d at 118-119 (internal citation omitted). Consistent with this function, the impact of

> §348(d) is appropriately limited to the Converted Case, so that the Plan Claims are treated as prepetition claims for all purposes in that case. The section does not, however, extend beyond the Converted Case to extinguish the Reorganized Debtor's contractual liabilities for the Plan Claims.
>       * * *
> In sum, because conversion did not undo the plan confirmation and §348(d) does not apply to the Plan Claims outside of the Converted Case, the Petitioning Creditors continue to hold claims against the Reorganized Debtor and they are not precluded as a matter of law from requesting involuntary relief under § 303 against that entity."

In re Troutman Enterprises, Inc., 253 B.R. at 8.  The Murdocks argue that because the Petitioning Creditors in Troutman were permitted to pursue their claims against the reorganized debtor, albeit in a new involuntary proceeding. They contend that they should be permitted to pursue their post-confirmation claim against the Holquins in state court, unhampered by the converted Chapter 7 proceedings because that would be fair since not all of the Holquins' property (the San Jose property) is in the Chapter 7 estate.[9]

This Court finds that, indeed, were it not for the Chapter 7 conversion, which they initiated, the Murdocks would have been able to pursue their state court remedy, and if successful, execute on property vested in the Murdocks. However, the Chapter 7 conversion had the dual effect of making their post-confirmation debt dischargeable in the Chapter 7 proceedings, while limiting the assets to which they could look for a dividend to those assets subject to the confirmed plan.

There is no unfairness in this result. The Chapter 11 process in which the Murdocks participated offered them the opportunity to obtain relief which they could not have had if the case were initiated as and remained a straightforward Chapter 7 proceeding. In exchange for Chapter 11 treatment and the potential for greater benefit, they gave up all pre-confirmation claims. If, as was the case here, the plan does not succeed, they can assert their post-confirmation claim in a Chapter 7 proceeding which includes all of the property of the debtor which was subject to that claim under the plan. These circumstances, strictly born out of the operation of the Bankruptcy Code, present no

---

[9]The Court notes that the circumstances in Troutman are different from those presented in this case. Troutman involved a new involuntary petition under §303, which presents different legal circumstances than are involved in a conversion of a confirmed Chapter ll plan to Chapter 7.

16

inherent unfairness which affects dischargeability of the debt in the course of the converted Chapter 7 proceedings.

## V.  CONCLUSION

For the reasons set forth above, the Bankruptcy Court's order is AFFIRMED.

Dated: April 21, 2005

/s/ James Ware
JAMES WARE
United States District Judge

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN DELIVERED TO:**

Benjamin Pavone blp13@cornell.edu
Joseph M. Biasella jbiasella@aol.com

**THIS IS TO CERTIFY THAT COPIES OF THIS ORDER HAVE BEEN MAILED TO:**

USBC Manager-San Jose
US Bankruptcy Court
280 South First Street
Room 3035
San Jose, CA 95113

Arthur S. Weissbrodt
U.S. Bankruptcy Court
280 South First Street
Room 3035
San Jose, CA 95113

**Dated: April 21, 2005**                                          **Richard W. Wieking, Clerk**


                                                                   **By:   /s/ Ronald L. Davis**
                                                                           **Ronald L. Davis**
                                                                           **Courtroom Deputy**

18